UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| KRISTIE A. BUTLER, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 2:15-cv-282 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Kristie A. Butler, on July 27, 2015. For the following reasons, the decision of the Commissioner is **REMANDED**.

*Background*

The plaintiff, Kristie A. Butler, filed an application for Disability Insurance Benefits and Supplemental Security Income on July 30, 2012, alleging a disability onset date of January 15, 2009. (Tr. 17). The Disability Determination Bureau denied Butler's claims on October 30, 2012, and again upon reconsideration on February 9, 2013. (Tr. 17). Butler subsequently filed a timely request for a hearing on March 21, 2013. (Tr. 17). A hearing was held on January 8, 2014, before Administrative Law Judge (ALJ) Romona Scales, and the ALJ issued an unfavorable decision on March 27, 2014. (Tr. 17–32). Vocational Expert (VE) Stephen P. Davis and Butler testified at the hearing. (Tr. 17). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7).

The ALJ found that Butler met the insured status requirements of the Social Security Act through June 30, 2014. (Tr. 19). At step one of the five step sequential analysis for determining

whether an individual is disabled, the ALJ found that Butler had not engaged in substantial gainful activity since January 15, 2009, the alleged onset date. (Tr. 19). At step two, the ALJ determined that Butler had the following severe impairments: spondylolisthesis, an affective disorder, a generalized anxiety disorder, and a polysubstance abuse disorder in remission. (Tr. 19). At step three, the ALJ concluded that Butler did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 21). In determining whether Butler had an impairment or combination of impairments that met the severity of one of the listed impairments, the ALJ considered Listing 12.04, affective disorders, and Listing 12.06, anxiety related disorders. (Tr. 21).

In finding that Butler did not meet the above listings, the ALJ considered the Paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 21). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated, extended episodes of decompensation as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 21). The ALJ found that Butler had a mild restriction in daily living activities. (Tr. 21). She noted that Butler could care for her four children, complete household chores, cook, drive, and maintain personal hygiene. (Tr. 21). She indicated that Butler's mother corroborated the above activities. (Tr. 21). The ALJ also mentioned that Butler maintained her daily living activities when struggling with familial loss. (Tr. 21). Considering the above, the ALJ adopted the mild restriction in daily living activities found by the State agency psychological consultants. (Tr. 21).

The ALJ and the State agency psychological consultants found that Butler had moderate difficulties in social functioning. (Tr. 21). Butler reported significant anxiety when interacting with others, she isolated herself to avoid social anxiety, and she was tearful during a psychological consultative examination. (Tr. 22). However, a function report indicated that she could shop, use public transportation, and go out alone, maintained appropriate eye contact, and had no social limitations while dealing with a family death. (Tr. 22). Ultimately, the ALJ found that Butler had a moderate limitation but that she was not as limited as alleged. (Tr. 22).

The ALJ and the State agency psychological consultants concluded that Butler had moderate difficulties in concentration, persistence, and pace. (Tr. 22). The ALJ noted that Butler could help her children with their homework, cook full meals, sew, and follow directions. (Tr. 22). Butler did not need reminders to complete tasks and could maintain attention and focus to watch television. (Tr. 22). A psychological consultative examination found that Butler's information fund was intact, her memory was preserved, her mathematical skills were normal, her speech was fluent, and her thoughts were logical. (Tr. 22). Butler's primary care clinician did not notice any concentration, persistence, or pace limitations. (Tr. 22).

The ALJ also found that Butler had not experienced any extended episodes of decompensation. (Tr. 22). Because Butler did not have at least two marked limitations or one marked limitation and repeated, extended episodes of decompensation, the ALJ determined that Butler did not meet the Paragraph B criteria. (Tr. 22). Additionally, the ALJ concluded that Butler did not meet the Paragraph C criteria for Listing 12.04 or Listing 12.06. (Tr. 22–23). Specifically, the ALJ found that Butler did not meet the Paragraph C criteria for Listing 12.04 because the evidence did not demonstrate a chronic affective disorder of at least two years that caused more than a minimal limitation in completing basic work activities. (Tr. 22). The ALJ

also stated that Butler's symptoms did not meet the requirements and that an environmental change would not likely cause Butler to decompensate. (Tr. 22–23). The ALJ found that Butler did not satisfy the Paragraph C criteria for Listing 12.06 because her severe impairments did not prevent her from functioning independently outside her home. (Tr. 23).

The ALJ then assessed Butler's residual functional capacity (RFC) as follows:

> the claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 6 hours in an 8-hour work period, and sit for up to 6 hours in an 8-hour work period. The claimant can frequently balance and stoop, but only occasionally kneel, crouch, crawl, and climb. The claimant must avoid concentrated exposure to extreme cold, dusts, odors, fumes, gases, and areas of poor ventilation. The claimant can understand, remember, and carryout simple, routine tasks/instructions; she can maintain adequate attention and concentration for such tasks, but she can tolerate only brief and superficial interaction with co-workers, supervisors, and occasional, brief and superficial contact with the general public. Lastly, the claimant can manage the changes in a routine work setting.

(Tr. 23). The ALJ explained that in considering Butler's symptoms she followed a two-step process. (Tr. 23). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical and laboratory diagnostic technique that reasonably could be expected to produce Butler's pain or other symptoms. (Tr. 23). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Butler's functioning. (Tr. 23).

Butler has claimed that her spondylolisthesis, affective disorder, generalized anxiety disorder, and polysubstance abuse disorder have prevented her from working since January 2009. (Tr. 24). She has alleged that her spine locked up, that she felt severe pain despite taking pain medication, that she had limitations while sitting, standing, and walking, and that her toes on her right foot curled up. (Tr. 24). She also has reported anxiety, depression, fatigue, reduced

4

motivation, isolating tendencies, leg numbness, and significant medication side effects. (Tr. 24). The ALJ found that Butler's impairments could cause her alleged symptoms, but she did not find Butler credible regarding the intensity, persistence, and limiting effects of her symptoms. (Tr. 24).

The ALJ discounted Butler's symptoms related to her spondylolisthesis, affective disorder, generalized anxiety disorder, and polysubstance abuse disorder because her allegations were inconsistent with the objective medical evidence. (Tr. 24). For example, the ALJ indicated that Butler's records did not reflect significant limitations in 2009 and that she did not seek additional care for two years. (Tr. 24). In February 2011, Butler went to Community Hospital for musculoskeletal allegations. (Tr. 25). During the exam, Butler's gait was slow and antalgic and she had some movement limitations. (Tr. 25). However, the ALJ noted that her reflexes were intact, her strength was full, and her straight leg test was negative bilaterally. (Tr. 25). The doctor prescribed medication and ordered her to stop smoking, and the ALJ stated that Butler received very conservative treatment. (Tr. 25). The ALJ also indicated that Butler did not comply with her doctor's order to stop smoking, which the ALJ held against Butler. (Tr. 25).

The ALJ mentioned that Butler told her primary clinician, Dr. Darryl Fortson, that she could walk three city blocks, that she smoked a pack of cigarettes daily, and that she was sexually active. (Tr. 25). The ALJ concluded that Butler's sexual activity contradicted her claims of low back pain because it involved significant physical activity. (Tr. 25). The ALJ indicated that Dr. Fortson's toxicology results demonstrated marijuana and cocaine use, despite Butler's claims that she stopped using all substances in 2009. (Tr. 25). The ALJ stated that that inconsistency hurt Butler's credibility. (Tr. 25). Following an appointment with Dr. Fortson in

5

March 2011, the ALJ indicated that Butler did not receive treatment for approximately eighteen months. (Tr. 26).

In August 2012, Butler saw her orthopedist, who conducted a radiographic imaging and a MRI. (Tr. 26). The tests revealed vertebral subluxation and spondylolisthesis at the L5-S1 level and a mild disc bulge at the L3-L5 level. (Tr. 26). However, there was no evidence of canal stenosis or herniation. (Tr. 26). Also in August 2012, Butler saw Dr. Daryl Fortson for psychological symptoms and went to St. Mary Medical Center for back pain. (Tr. 26). Butler underwent two epidural steroid injections, which she reported reduced her pain. (Tr. 26). However, Butler reported inconsistent pain levels including no relief at times and less sharp pain occasionally. (Tr. 26). The ALJ stated that those same records indicated that Butler had no gait abnormalities, no musculoskeletal deficiencies, no distress, and that her affect was appropriate. (Tr. 26).

On October 3, 2012, Butler underwent a physical consultative examination where she alleged back pain. (Tr. 26). The ALJ noted that Butler stated that her physical therapy worsened her pain, but that Butler told her primary clinician that physical therapy improved her pain. (Tr. 26). The ALJ also indicated that Butler reported severe shortness of breath and that Butler drove herself to the exam, which the ALJ found inconsistent with Butler's reports to her primary clinician and her claimed limitations. (Tr. 26–27). During the exam, Butler's gait was not antalgic, she sat comfortably, her range of movement was intact, she had no strength deficits, and her straight leg raise test was negative bilaterally. (Tr. 27). The physician did not find any musculoskeletal limitations. (Tr. 27).

Butler then underwent a psychological consultative examination where she alleged mental health issues since 2005, including mood swings. (Tr. 27). The examiner noted that

6

Butler was tearful, her information fund was intact, her memory and abstract thought were normal, and that she maintained appropriate eye contact. (Tr. 27). The examiner found Butler depressed but without anxiety. (Tr. 27). She concluded that Butler's daily living activities, including caring for her children, managing finances, and completing household chores, was full, that she had a depressive disorder, and that she had a GAF score of 55. (Tr. 27).

In early 2013, Butler began therapy at Porter/Starke and continued treatment with her general physician. (Tr. 27). The ALJ noted that Butler had similar results to her prior psychological examination during her 2013 initial evaluation. (Tr. 27). Following the 2013 evaluation, the clinician assessed Butler with a GAF score between 45 and 50. (Tr. 27). Follow up records indicated that Butler had ongoing depressive and anxiety issues. (Tr. 27). However, the records also demonstrated that Butler's daily living activities improved, that she was alert and oriented, that she had no memory, judgment, or insight issues, and that her concentration, persistence, and pace was intact. (Tr. 27–28). Throughout June, July, and August 2013, Butler had few deficits but had increased anxiety while interacting with strangers. (Tr. 28). In September, her mood and affect were normal, and she began caring for her daughter fulltime in October. (Tr. 28). Butler reported the same symptoms, but the clinician noted that she was mildly dysphoric. (Tr. 28). Butler's mood worsened after her daughter lost a child. (Tr. 28).

Throughout 2013, Fortson did not note gait or musculoskeletal abnormalities. (Tr. 28). Butler denied having radicular pain at that time and admitted that she used marijuana after her toxicology screen was positive. (Tr. 28). The ALJ indicated that Butler had stiffness and muscle spasms to palpation but that she had no further limitations by October. (Tr. 28).

The ALJ stated that Dr. Kim submitted an opinion inconsistent with her unremarkable records in December 2013. (Tr. 28). The ALJ indicated that she did not give controlling weight

7

to this opinion because it was inconsistent with the record. (Tr. 28). She noted that the opinion found that Butler had a poor memory, concentration, persistence, and pace limitations, and a marked limitation in remaining neat. (Tr. 28–29). The ALJ stated that the objective records did not support those findings. (Tr. 28). The ALJ also stated that the opinion contradicted itself. (Tr. 28). She stated that the opinion concluded that Butler would miss work three to four times a month and that her severe social limitations would cause significant limitations while interacting with the public or travelling to unfamiliar places. (Tr. 29). However, the ALJ stated that the opinion did not include any limitations for remembering procedures or instructions, maintaining attendance, sustaining a routine, or making simple decisions. (Tr. 28).

In rejecting the December 2013 opinion, the ALJ indicated that Butler could complete moderate daily living activities, including household chores, helping her children with homework, shopping, caring for her bedridden daughter, and looking for new housing. (Tr. 28). She noted that the record did not show that Butler was distracted, that her memory was lacking, or that her thoughts and speech were limited. (Tr. 29). The ALJ also stated that there was no evidence of decompensation. (Tr. 29). The ALJ questioned whether Dr. Kim understood the agency's decompensation definition. (Tr. 29). The ALJ further questioned the opinion because Dr. Kim found Butler severely limited since 2011, despite only treating her during 2013. (Tr. 29). Based on the above, the ALJ afforded little weight to this opinion. (Tr. 29).

The ALJ noted additional inconsistencies that adversely affected Butler's credibility. (Tr. 29). She indicated that the record did not demonstrate restricted spinal movement that would cause a lock up. (Tr. 29). Although Butler testified that she limped most of the time, neither primary clinician found any gait abnormalities. (Tr. 29). Additionally, the ALJ stated that the

8

record did not support Butler's claimed level of isolation. (Tr. 29). Considering the above, the ALJ did not find that Butler's limitations prevented her from performing light work. (Tr. 29).

The ALJ then addressed Dr. Fortson's opinion that Butler could not work due to her alcoholism and bending, lifting, and stooping limitations. (Tr. 29). The ALJ stated that Dr. Fortson's conclusions were not quantified in agency terms and that the evidence did not support the postural limitations. (Tr. 29). For example, the ALJ noted that Dr. Fortson's records only demonstrated mild range of movement limitations and intact gait and functionality. (Tr. 29). She also stated that Butler's claimed limitations did not provide any support for Dr. Fortson's opinion. (Tr. 29). Moreover, the ALJ stated that Dr. Fortson's opinion touched on issues reserved for the Commissioner. (Tr. 30).

The ALJ also stated that Dr. Fortson's July 2013 opinion was unsupported. (Tr. 30). In his July 2013 opinion, Dr. Fortson concluded that Butler had musculoskeletal and psychological issues. (Tr. 30). However, the ALJ stated that Dr. Fortson's records only referenced minor skeletal abnormalities and few psychological abnormalities. (Tr. 30). The ALJ stated that there was no evidence of a respiratory limitation because Butler's lungs were clear to auscultation without rales, rhonchi, or wheezes, despite the opinion finding that she was short of breath regularly. (Tr. 30). The ALJ discounted the conclusion that Butler needed to lie down three hours in an eight-hour workday based on her daily living activities and the lack of a consistent finding from Butler's clinicians. (Tr. 30). The ALJ stated that there was no evidence to support Dr. Fortson's fingering and upper extremity limitations or that Butler needed to avoid smoke exposure when she smoked a pack of cigarettes daily. (Tr. 30). Based on the above, the ALJ gave Dr. Fortson's opinion little weight. (Tr. 30).

9

At step four, the ALJ determined that Butler could not perform her past relevant work. (Tr. 30). Considering Butler's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that she could perform, including table worker (23,000 jobs regionally and 229,000 nationally), investigator of dealer accounts (1,600 jobs regionally and 211,000 jobs nationally), and shipping and receiving weigher (2,100 jobs regionally and 187,000 jobs nationally). (Tr. 31).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); ***Pepper v. Colvin***, 712 F.3d 351, 361–62 (7th Cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098; ***Pepper***, 712 F.3d at 361–62; ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013); ***Rice v. Barnhart***,

384 F.3d 363, 368–69 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be

found not disabled.  **20 C.F.R. §§ 404.1520(e), 416.920(e)**.  However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

First, Butler has argued that the ALJ overstated the significance of her daily living activities.  She has indicated that the ALJ relied on her ability to care for her four children, complete household chores, cook, and maintain personal hygiene to find her not disabled.  Butler has claimed that the ALJ failed to consider that her children were teenagers who did not need significant supervision, that her daughter helped her cook and complete chores, that she completed chores in short intervals, that she could not get out of bed some days, and that she needed assistance for daily activities from case managers through Porter Starke Services.  She has argued that her sporadic activities, including caring for her children, was not substantial evidence to support the ALJ's opinion and that her activities did not equate to an ability to work full time.

The notes to SSR 96-8P explain that the "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  When making this determination, the ALJ may consider the claimant's daily activities.  If the ALJ places significant weight on a claimant's daily activities to support a finding that the claimant can sustain employment, the activities must reflect that the person is capable of engaging in work eight hours a day for five consecutive days a week.  ***Carradine v. Barnhart***,

12

360 F.3d 751, 755 (7th Cir. 2004); *see* **Hughes v. Astrue**, 705 F.3d 276 (7th Cir. 2013); **Roddy v. Astrue**, 705 F.3d 631 (7th Cir. 2013). To show this, the record should reflect that the claimant engaged in such activities for a substantial part of the day. *Carradine*, 360 F.3d at 756. Evidence of sporadic physical activity is not sufficient because a claimant may engage in sporadic activities despite pain, but may not be able to engage in continuous activity for an 8-hour workday. *Carradine*, 360 F.3d at 756. Moreover, the activities must be translatable to a work setting. *Carradine*, 360 F.3d at 756. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer." *Hughes*, 705 F.3d at 278 (quoting **Bjornson v. Astrue**, 671 F.3d 640, 647 (7th Cir. 2012)). The ALJ must make a clear record that the claimant's activities were such that the claimant could perform duties common to the work place on a sustained basis. *Carradine*, 360 F.3d at 756.

Butler is correct that the Seventh Circuit has criticized ALJs for overemphasizing daily living activities or equating those activities with an ability to work full time. *See* **Bjornson v. Astrue**, 671 F.3d 640, 647 (7th Cir. 2012); **Spiva v. Astrue**, 628 F.3d 346, 352 (7th Cir. 2010). But the ALJ should consider a claimant's daily living activities when assessing whether the claimant's testimony regarding the severity of her impairments is credible. *See* **20 C.F.R. § 404.1529(c)(3)(i)** (indicating that the agency will consider daily living activities when assessing the severity of a claimant's symptoms); **SSR 96-7P**, 1996 WL 374186, at *3 (instructing ALJs to consider daily living activities when evaluating a claimant's credibility). Here, the ALJ considered Butler's daily activities, among many factors, when assessing her credibility and when determining her RFC. For example, the ALJ noted that Butler's sexual

activity was inconsistent with her alleged low back pain, that her ability to drive herself was inconsistent with her claimed limitations, that her daily activities were full in 2012, and that her activities had improved in 2013. (Tr. 25, 27).

However, the ALJ also improperly equated her daily living activities with an ability to work full time. She rejected Dr. Fortson's limitation that Butler needed to lie down three hours a day because she cared for her bedridden daughter and completed household chores. (Tr. 30). She also rejected the moderate daily living activities limitation because Butler could complete household chores, help her children, shop, and look for housing. (Tr. 29). The Seventh Circuit has held that the "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." ***Scrogham v. Colvin***, 765 F.3d 685, 700 (7th Cir. 2014) (citation omitted). Butler reported that her children helped her with household chores, that she had to complete chores in short intervals, that she could not get out of bed on some days, and that she required assistance through Porter Starke Services to complete daily living activities. (Tr. 55, 57, 203–06). The ALJ did not address the assistance Butler received from Porter Starke Services or explain how her sporadic performance with assistance established that she could engage in substantial gainful activity.

Additionally, the Seventh Circuit has cautioned ALJs from equating a claimant's care for a family member with an ability to work. ***Beardsley v. Colvin***, 758 F.3d 834, 838 (7th Cir. 2014). Here, the ALJ criticized Butler for caring for her children, particularly for helping her bedridden daughter. *See **Gentle v. Barnhart***, 430 F.3d 865, 867 (7th Cir. 2005) ("Gentle *must* take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts."). Although Butler reported that she cared for her children, she also stated that her mother helped. (Tr. 204). The ALJ did not explain why that ability

14

demonstrated that Butler could complete substantial gainful employment. Without further explanation, the ALJ should not have placed significant weight on Butler's daily living activities when finding her not disabled. On remand, the ALJ should explain how Butler's daily living activities established that she could work full time.

Second, Butler has claimed that the ALJ improperly dismissed the treating physicians' opinions. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *see Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." *Bates*, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting

15

evidence of disability."); *see, e.g.*, **Latkowski v. Barnhart**, 93 Fed. App'x 963, 970–71 (7th Cir. 2004); **Jacoby v. Barnhart**, 93 Fed. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. **Moore v. Colvin**, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing **Similia v. Astrue**, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." **Hofslien v. Barnhart**, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see* **Punzio**, 630 F.3d at 713.

Dr. Kim diagnosed Butler with Bipolar Disorder NOS, Panic Disorder, and Generalized Anxiety Disorder. (Tr. 517). He concluded that her impairments would cause her to miss work more than three days per month. (Tr. 518). He also found that Butler had a moderate restriction in daily living activities, a marked restriction in social functioning, constant deficiencies in concentration, persistence, or pace, and repeated episodes of decompensation. (Tr. 520). The ALJ rejected Dr. Kim's opinion because it was inconsistent with the medical evidence, his opinion contradicted itself, and the opinion was inconsistent with Butler's daily activities. (Tr. 28–29).

Butler has argued that the ALJ erred by finding Dr. Kim's opinion inconsistent with the medical evidence. The ALJ rejected Dr. Kim's opinion that Butler had a poor memory because other specialists found that her recent and remote memory were intact. (Tr. 28). Butler has indicated that she reported forgetfulness and confusion, which supported Dr. Kim's finding. (Tr. 431, 437). The ALJ also rejected Dr. Kim's concentration, persistence, or pace limitations as

16

inconsistent with the record. (Tr. 28). Butler referenced medical records where she complained about concentration and focus issues stemming from her depression and anxiety. (Tr. 433). Moreover, she has argued that the ALJ failed to consider regulatory factors when rejecting Dr. Kim's opinion, such as the length of his treating relationship, the extent of his treatment, and whether he was a specialist.

The ALJ minimally articulated her reasons for rejecting Dr. Kim's opinion. She indicated that his opinion was inconsistent with his records. For example, she noted that Dr. Kim found no limitations for remembering work-like procedures and simple instructions, yet he concluded that Butler had a poor memory. (Tr. 28). She also identified opinions that were inconsistent with other objective medical evidence. (Tr. 28–29). However, because this matter is being remanded on a separate issue, the ALJ should consider the conflicting evidence listed by Butler on remand.

Dr. Fortson treated Butler monthly for over two years and diagnosed her with lumbosacral spondylosis, major depression, emphysema, chronic obstructive pulmonary disease, and anxiety. (Tr. 478). He concluded that Butler needed to rest or lie down for three hours out of an eight-hour workday and that she would miss about three workdays a month. (Tr. 481, 484). The ALJ afforded Dr. Fortson's opinions little weight because Butler's daily living activities demonstrated that she did not need to lie down for three hours during a workday. (Tr. 30). She also discredited his findings of musculoskeletal issues, psychological issues, respiratory issues, and upper extremity limitations as inconsistent with Dr. Fortson's records or other objective medical evidence. (Tr. 30).

Butler has claimed that the ALJ relied on her daily living activities improperly to reject Dr. Fortson's opinions. She also has argued that the ALJ failed to consider the factors required

17

by the agency's regulations. The ALJ did rely on Butler's daily living activities to discredit Dr. Fortson's opinion. (Tr. 30). However, as discussed above, the ALJ did not consider Butler's daily living activities properly or explain how they demonstrated that she could perform substantial gainful activity. Therefore, the ALJ should reconsider Dr. Fortson's opinion on remand along with Butler's daily living activities.

Next, Butler has argued that the ALJ found incorrectly that she did not meet Listing 12.04 or Listing 12.06. For a claimant to show that she meets a listed impairment, she must demonstrate that her impairment meets each required criterion, and she bears the burden of proof in showing that her condition qualifies. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). A condition that meets only some of the required medical criteria, "no matter how severely," will not qualify as meeting a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).

Section 12.00(A) of the social security regulations describes the structure of the Mental Disorder Listings. To show that she meets the Mental Disorder Listing, the claimant must submit a set of medical findings that support a diagnosis of one of the listed medical impairments. After the claimant has met this burden, the court must assess the severity of the impairment under Paragraph B. **20 C.F.R. § 404.1520a(a)**. Paragraph B sets forth the impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The claimant's functional limitations are assessed by using the four criteria set forth in Paragraph B of the listings: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. **Listing 12.00(C); 20 C.F.R. § 404.1520a(c)(3)**. Each functional limitation must be evaluated to determine the severity, taking into consideration "all relevant and available clinical signs and laboratory findings, the

effects of [the] symptoms, and how [the claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." **20 C.F.R. § 404.1520a(c)(1)**. If the degree of limitation is none or mild in the first three categories and none in the fourth, the impairment is not severe. **20 C.F.R. § 404.1520a(d)(1)**. Otherwise, the court will proceed to determine whether the claimant meets the criteria set forth by the Listing for the specific mental impairment for which she was diagnosed.

The ALJ found that Butler had mild restrictions in daily living activities, moderate restrictions in social functioning, moderate difficulties in concentration, persistence, or pace, and had not experienced any extended episodes of decompensation. (Tr. 21–22). Therefore, she determined that Butler did not fulfill the Paragraph B criteria for either listing because she did not have at least two marked restrictions or one marked restriction and repeated episodes of decompensation. (Tr. 22). The ALJ also found that Butler did not meet the Paragraph C criteria for Listing 12.04 or 12.06 because Butler did not establish the required criteria. (Tr. 22–23). The Commissioner has argued that the ALJ supported her step three finding with substantial evidence and that she minimally articulated her reasons for each listing finding.

Butler has argued that Dr. Kim's opinion demonstrated that she met Listing 12.04 and 12.06 based on his findings of the Paragraph B criteria. Additionally, she has claimed that the ALJ adopted the opinions of the State agency psychological consultants over Dr. Kim's opinion, despite the fact that the consultants never reviewed a significant portion of the mental health records. Therefore, she has argued that the ALJ should have required the consultants to update their opinions based on the new evidence. On remand, the ALJ should consider whether it is

19

necessary to obtain updated opinions from the psychological consultants. Furthermore, she should determine whether Dr. Kim's opinion establishes Listing 12.04 or 12.06.

Last, Butler has argued that the ALJ failed to support her step five finding with substantial evidence. She has indicated that the VE testified that Butler could not perform her past work or any other work if Dr. Fortson's and Dr. Kim's opinions were accepted. (Tr. 69–70). Because the ALJ should reconsider those opinions on remand, she should also reconsider her step five finding.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 16th day of May, 2016.

/s/ Andrew P. Rodovich
United States Magistrate Judge